FILED
2014 Aug-22  PM 12:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| **MALAIKA COBB, o/b/o Z.G.B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **6:12-cv-2928-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION

Plaintiff Malaika Cobb ("Cobb") brings this action on behalf of her son,
Z.G.B. ("the Claimant"), pursuant to Section 205(g) of the Social Security Act
("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of
the Commissioner of the Social Security Administration ("SSA"). This court
finds that the Administrative Law Judge's ("ALJ") decision - which has become
the decision of the Commissioner - is supported by substantial evidence.
Therefore, for the reasons elaborated herein, the court will affirm the decision
denying benefits.

## I.  Procedural History

Cobb protectively filed an application on behalf of her minor child, Z.G.B., for the child's Supplemental Security Income ("SSI"), alleging a disability onset date of April 1, 2008, due to Asthma. (R. 10, 172). After the SSA denied his claim, the Claimant requested a hearing before an ALJ. (R. 101). The ALJ subsequently denied the Claimant's claim, (R. 7-24), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Cobb then filed this action for judicial review pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is "reasonable and supported by substantial evidence." *See id.* (citing

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial

evidence falls somewhere between a scintilla and a preponderance of evidence;

"[i]t is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d

at 1239) (other citations omitted).  If supported by substantial evidence, the court

must affirm the Commissioner's factual findings even if the preponderance of the

evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.

While the court acknowledges that judicial review of the ALJ's findings is

limited in scope, it notes that the review "does not yield automatic affirmance."

*Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if the claimant

has a medically determinable physical or mental impairment which results in

marked and severe functional limitations, and which is expected to result in

death, or which has lasted or is expected to last for a continuous period of not

less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(I).  The regulations define the

statutory standard of "marked and severe functional limitations" in terms of

"listing-level severity."  20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a);

*see* 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings).  The Commissioner has

developed a specific sequential evaluation process for determining whether a

child claimant is disabled.  20 C.F.R. § 416.924.  The three-step process requires

a child to show:  (1) that he is not working; (2) that he has a "severe" impairment

or combination of impairments; and (3) that his impairment or combination of

impairments is of listing-level severity, that is, the impairments meet, medically

equal, or functionally equal the severity of an impairment in the listings.  20

C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the ALJ

must determine if the child's impairments meet or medically equal an impairment

listed in the listings.  20 C.F.R. § 416.924(a)-(d).  An impairment medically

equals a listing "if it is at least equal in severity and duration to the criteria of any

listed impairment."  If the claimant's impairments do not meet or medically equal

a listed impairment, the ALJ must then determine if the child's impairments are,

instead, functionally equivalent in severity.  20 C.F.R. §§ 416.924(d),

416.926a(a).  For the child's impairments to functionally equal a listed

impairment, they must result in "marked" limitations in two domains of

functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).

The ALJ considers the child's functioning in terms of six domains: (1) acquiring

and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(I)-(vi).  If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings, a finding of not disabled is reached and the claim is denied.  *See* 20 C.F.R. § 416.924(d)(2).

## IV.  The ALJ's Decision

In performing the three step analysis, initially, the ALJ determined that the Claimant has not engaged in any substantial gainful activity since his alleged disability onset date.  (R. 13).  Next, in satisfaction of Step Two, the ALJ found that the Claimant suffers from the severe impairment  of "asthma." *Id.*  Finally, at Step Three, the ALJ concluded that the Claimant's impairments did not meet, medically equal, or functionally equal any of the listed impairments and, therefore, found that the Claimant was not disabled.  (R. 13-14).

## V.  Analysis

The court now turns to Cobb's contentions that the ALJ erred by failing to (1) find the Claimant met listing 103.03B; and (2) fully develop the record by

utilizing a medical expert.  *See* doc. 10 at 5-8.  The court addresses each

contention in turn.

      A.     The ALJ properly found the Claimant did not meet listing 103.03B.

      Cobb contends that the Claimant meets listing 103.03B based on numerous

treatment notes that she asserts show asthma attacks.  Doc. 10 at 6-7.  To meet

listing 103.03B, the Claimant must have asthma with:

> [a]ttacks (as defined in 3.00C), in spite of prescribed treatment and
> requiring physician intervention, occurring at least once every 2
> months or at least six times a year.  Each inpatient hospitalization
> for longer than 24 hours for control of asthma counts as two attacks,
> and an evaluation period of at least 12 consecutive months must be
> used to determine the frequency of attacks.

Listing 3.00C defines "attacks" as "prolonged symptomatic episodes lasting one

or more days and requiring intensive treatment, such as intravenous

bronchodilator or antibiotic administration or prolonged inhalational

bronchodilator therapy in a hospital, emergency room or equivalent setting."  The

Claimant bears the burden of showing that his impairments meet a listed

impairment.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  Moreover,

the Claimant's impairments must "meet *all* of the specified medical criteria.  An

impairment that manifests only some of those criteria, no matter how severely,

does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in

original).

Cobb identifies numerous physician visits during the relevant time period

(October 2008 through September 2009) that she contends qualify as "attacks"

within the meaning of the listing.[1]  Doc. 11 at 6.  Unfortunately for Cobb, a

review of the record shows that none of the six visits occurring during the

October 2008 - September 2009 period was of sufficient severity to constitute an

"attack" under listing 3.00C.  For example, Dr. Mary R. Santiago, the Claimant's

treating pediatrician, treated the Claimant for a rash and sinusitis on October 15,

2009, (R. 272), for a "knot on [the] back of [his] head" diagnosed as a fungal

infection on April 13, 2009, (R. 239, 241), for a cough, fever and sinusitis on

September 25, 2009, (R. 261, 264), and for an "acute illness" diagnosed as

influenza on September 28, 2009, (R. 268).  At each of these four visits, Dr.

Santiago's treatment notes show that she did not assess asthma or find that the

Claimant had trouble breathing.  (R. 241, 263-64, 268, 274).  Moreover, even the

visits when Dr. Santiago treated the Claimant for asthma fail to show that the

Claimant had an asthma attack as defined by the regulations:  (1) Dr. Santiago

saw the Claimant on November 17, 2008, for coughing, wheezing, and fever, (R.

---

[1]  Cobb listed seven visits:  October 15, 2008; November 17, 2008; January 29, 2009; April 13, 2009; September 13, 2009; September 25, 2009; and September 28, 2009.  Doc. 10 at 6.  However, there is no record of a visit on September 13, 2009.  The nearest visit to that date is for a "well child visit," on September 14, 2009, when Dr. Santiago noted the Claimant was "healthy school is fine has [a history of] asthma doing well plays football." (R. 248).

276-78), and (2) on January 29, 2009, for coughing and shortness of breath.  (R. 231-34).  However, on both occasions Dr. Santiago sent the Claimant home with prescription medications, and the Claimant received no "intensive treatment" such as "intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting" as required by listing 3.00C.  (R. 231-34, 276-78).

Cobb next lists six visits from December 2009 through December 2010 that she contends are "attacks that required physician intervention."[2]  Doc. 10 at 6).  As with the Claimant's earlier visits, none of these visits qualifies as "attacks" as defined in listing 3.00C.  For instance, when the Claimant saw Dr. Santiago on June 2, 2010, it was for a "well child visit" to get a "sports physical for football," (R. 355), and on August 27, 2010, the Claimant complained of fever, sore throat, diarrhea, and a runny nose,  (R. 336).  Dr. Santiago made no mention of an asthma attack, and, in fact, found "no rales, rhonchi, or wheezes" on physical examination.  (R. 358, 338).  Indeed, even the plaintiff's emergency room visits fail to qualify as "attacks" under listing 3.00C.  Specifically, when the Claimant visited the Marion Regional Medical Center emergency room on

---

[2] Cobb lists these visits as being on June 2, 1010; August 27, 2010; September 12, 2010; September 13, 2010; October 9, 2010; and October 10, 2010.  Doc. 10 at 6. However, there is no treatment note dated October 10, 2010 in the record.

September 12, 2010, for "coughing" and "sinus drainage," (R. 301), the Claimant had normal blood oxygen, with an oximetry reading of 99 percent. (R. 303). At this visit, the Claimant was diagnosed with an upper respiratory infection, given a prescription for an anti-inflammatory medication, and sent home the same day without any intensive treatment for asthma. (R. 307). In fact, when Dr. Santiago saw the Claimant the next day, she noted that the Claimant's "wheezing is better," that he "plays football," and experiences coughing and wheezing "when running." (R. 350). Although Dr. Santiago noted that the Claimant was experiencing an "acute exacerbation" of his asthma, (R. 353), she found "no rales, rhonchi, or wheezes" on physical examination, (R. 352), noted the Claimant's asthma exacerbation had improved, and recommended that the Claimant take his medications as needed "before PE and sports." (R. 353). The final treatment note cited by Cobb shows that the Claimant visited the Marion Regional Medical Center emergency room on October 9, 2010, for "asthma and a cough," (R. 290), and that tests showed the Clamant had normal blood oxygen, with an oximetry reading of 100 percent, and mild wheezing. (R. 294). As a result, the Claimant received prescriptions and was sent home without receiving any intensive treatment in the emergency room. (R. 299). In other words, the

treatment record simply does not support Cobb's contention that the Claimant

suffered "attacks" as defined in listing 3.00C.

Ultimately, the Claimant bears the burden of presenting medical evidence

showing his impairments meets a listing.  *Zebley*, 493 U.S. at 531.  Unfortunately

for the Claimant, the evidence shows that he has not suffered the requisite asthma

attacks required to meet listing 103.03B.  Therefore, Cobb failed to meet her

burden of establishing that the ALJ committed reversible error by finding the

Claimant's impairments did not equal a listing.

B.      The ALJ did not err by failing to utilize a medical expert.

Cobb's final contention is that the ALJ "needed a medical expert to

determine whether the symptoms of each physician intervention . . . were the

result of symptoms of asthma."  Doc. 10 at 8.  However, as is evident from the

discussion of the doctor visits in the previous section, the ALJ needed no medical

expert to determine that the physician interventions cited by the plaintiff were not

"attacks" as defined in listing 3.00C.  In fact, the treatment notes that Cobb relies

on are self explanatory and do not require interpretation by a medical expert.

Accordingly, the ALJ did not err in failing to utilize a medical expert.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that the Claimant is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done, this the 22nd day of August, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE